UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
RICHARD ALFARO,

                      Plaintiff,                          AFFIDAVIT IN
OPPOSITION TO
DEFENDANTS' MOTIONS
TO DISMISS PURSUANT
TO FRCP 12(b)(6)

                                                      CV 06 1470

        -against-

BARBARA LABADOR, individually, BETH WICKEY,          (Seybert) (Wall)
individually, ANN NOWAK, individually, HUBERT
PHILLIPS, individually, KEITH TUTHILL, individually,
PAUL HOULIHAN, individually, WILLIAM MEES,
individually, STEVEN FRANO, individually, JONATHAN
IRWIN, individually, "JOHN DOE" and "JANE DOE",
#1-5, 6-10, and 11-15 individually and personally
representing the fictitious or partially fictitious names
of individuals, whose full names are unknown to Plaintiff,
were at all relevant times herein, employees of the TOWN
OF SOUTHAMPTON BOARD MEMBERS comprising
THE SOUTHAMPTON ZONING BOARD OF APPEALS,
THE TOWN OF SOUTHAMPTON DEPARTMENT OF
LAND MANAGEMENT AND ZONING DIVISION,
and the TOWN OF SOUTHAMPTON,

                            Defendants.
-------------------------------------------------------------------------X

        CONCETTA M. RINALDI, being an attorney duly authorized to practice law in the

courts of this state, duly affirms under penalties of perjury that:

        1.      I am an associate of the law firm of PERRY & CAMPANELLI,  LLP, attorneys

for the plaintiff Richard Alfaro.

        2.      I submit this Affirmation in Opposition to the defendants' motions to dismiss the

Complaint pursuant to FRCP 12(b)(6).

3.     Plaintiff Richard Alfaro commenced this action against the above named defendants, based upon a violation of plaintiff's rights to due process and equal protection under the Fourteenth Amendment, based upon racial discrimination, selective enforcement of the laws, and the defendants' treatment of plaintiff as a class of one, in furtherance of their selective enforcement of the laws against plaintiff Alfaro.

4.     Instead of interposing an Answer, defendants have moved for dismissal under FRCP 12(b)(6), seeking a dismissal of the complaint.

5.     In further support of the plaintiff's Memorandum of Law in Opposition to defendants' Motion to Dismiss, annexed hereto as Exhibit "A" is a supplemental affidavit of plaintiff Alfaro.

6.     As fully set forth in the accompanying memorandum of law and for the reasons set forth therein, plaintiff Alfaro has sufficiently stated causes of action, all of which were timely commenced, there exists factual issues which remain in dispute, and therefore, defendants are not entitled to a dismissal.

**WHEREFORE**, it is respectfully requested that this Court deny defendants' Motions to Dismiss in their entirety and for such other and further relief as the Court deems just and proper.


Dated: Mineola, New York
        June 13, 2006


_____
Concetta M. Rinaldi (CR 0457)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RICHARD ALFARO,

                                        Plaintiff,

                          -against-

BARBARA LABADOR, individually, BETH WICKEY,
individually, ANN NOWAK, individually, HUBERT
PHILLIPS, individually, KEITH TUTHILL, individually,
PAUL HOULIHAN, individually, WILLIAM MEES,
individually, STEVEN FRANO, individually, JONATHAN
IRWIN, individually, "JOHN DOE" and "JANE DOE",
#1-5, 6-10, and 11-15 individually and personally
representing the fictitious or partially fictitious names
of individuals, whose full names are unknown to Plaintiff,
were at all relevant times herein, employees of the TOWN
OF SOUTHAMPTON BOARD MEMBERS comprising
THE SOUTHAMPTON ZONING BOARD OF APPEALS,
THE TOWN OF SOUTHAMPTON DEPARTMENT OF
LAND MANAGEMENT AND ZONING DIVISION,
and the TOWN OF SOUTHAMPTON,

                                 Defendants.
------------------------------------------------------------------------X

Index No.
CV 06 1470

**AFFIDAVIT**

STATE OF NEW YORK     )
                              ) ss.:
COUNTY OF NASSAU     )

**RICHARD ALFARO**, being duly sworn, deposes and says:

      1.      I am the plaintiff the above-referenced action, I reside at 30 Shinnecock Road,

Bays, New York,  and am familiar with the facts of this case.

      2.      In August 1997, I leased the premises located at 674 Montauk Highway, East

Quogue, New York, for the purposes of operating my automotive repair shop, Alfaro Motors 35th

Avenue, Inc.

3.      Prior to this, in 1996, I leased a property located at 163 Montauk Highway, Hampton Bays, New York.

4.      Upon the defendant Town's suggestion that I relocate my business based upon a citation I received, I moved my business to 674 Montauk Highway, East Quogue, New York, which was centrally located amongst many other automotive shops.

5.      Specifically, located adjacent to my property was Hampton Brake and Muffler, owned by defendant William Mees, who, from my first encounter with him, viewed me as a threat to his business and expressed his desire to have me removed from the vicinity.

6.      Across the street from my premises was Automagic East, another automotive repair shop, that was in the business of repairing vehicles for many years.

7.      Diagonal to my premises was yet another business, known as Loper's Equipment, which specialized in repairing lawn mower equipment and various other motors.

8.      Although all of these automotive repair shops were located in the "Village Business" district, which according to the defendant Zoning Board of Appeals, prohibits automotive repair shops, I was the only one targeted by the defendants.

9.      I moved onto the premises in August 1997 and within two months, I received a citation from the defendants for "illegal changed use" of the subject premises.

10.     At the time I received the violation, in October 1997, I had not even opened for business, so it was virtually impossible for me to have changed its use.

11.     Additionally, prior to receiving the Notice of Violation from the town, defendant Jonathan Irwin, whom I was acquainted with, when he came to inspect the property in September 1997, advised me that everything was in order and he found no violations.

12.     After I received the Notice of Violation, I was advised by letter dated October 27,

1997, from defendant Town that I should find yet another location to operate my business.

13.     I decided to obtain the proper permits and/or Certificate of Occupancy for operating my business, which I applied for in January 2000, after I purchased the premises.

14.     Throughout my occupancy of the premises, none of the other automotive shops, similarly situated, and operating with a Certificate of Occupancy and/or permit, ever received a citation, a complaint, nor any notification at all from the defendant Town that they were not permitted to operate in the "Village Business" district (which prohibits automotive repair shops pursuant to the Town Code).

15.     Not only was I the only one subjected to the defendant Town's enforcement of its laws against me, but I also suffered from discriminatory acts by my neighbor, William Mees, owner of Hampton Brakes.

16.     From the day I moved in, I knew Mees to be the personal mechanic to many town officials, and knew that he resented me moving next door to operate an automotive repair shop in direct competition with his.

17.     In fact, on a regular basis, I personally observed many of the defendants on Mees' property, fraternizing with Mees and having their vehicles repaired by him.

18.     William Mees illustrated his hatred and bias toward me from the day I moved in. Over the years, I was involved in verbal altercations with defendant Mees, during which time he would spew racial slurs regarding my hispanic ancestry.

19.     Many times, these comments were made in the presence of town officials, who witnessed the altercations.

20.     It was clear to me that defendants Mees and the Town had conspired to have me removed from my premises and drive me out of business.

21.     Mees, on a few occasions, referred to me as a "spic bastard that would be off the property before long."

22.     In conjunction with Mees' statements, the defendant Town began to investigate ways to remove me from the premises, which resulted in several actions by them over the course of years, including but not limited to issuing a Notice of Violation only to me and no other automotive repair shop, the denial of my application by the defendant Town for a variance, and a statement by the defendant Frano that I am now "on the agenda, not the others."

23.     Although it appeared that the defendant Town wanted to prohibit me, a hispanic, from operating an automotive repair shop, while allowing the others to continue to do so, I was unaware that the Town Code prohibited such businesses from operating in the area known as the "Village Business District".  Therefore I was unaware that the defendants chose to selectively enforce the laws against me and no one else, in violation of my rights of equal protection of the laws.

24.     After I filed my application with defendant Zoning Board in January 2000, I waited over one year for the defendants to conduct a hearing and render a decision, which of course, after their undue delay, ultimately denied my application.

25.     During the pendency of my application, my neighbor, defendant William Mees, in an obvious attempt to further the conspiracy between himself and the Town, hired former town attorney Douglas Penny to represent him in opposing my application before the Town Board.

26.     Upon receipt of the decision by the Zoning Board denying my application for a special use permit, I filed an Article 78 proceeding in Supreme Court challenging the validity of the decision, still unaware that the adverse decision was racially motivated and driven by the defendants' desire to selectively enforce their laws against only me.

27.     In November 2002, I filed an Appeal with the Appellate Division, appealing the adverse decision I received on the Article 78, doing everything in my power to regain my rights to operate my business on my property.

28.     During this time, from the moment I leased the premises to the moment the raid occurred on April 10, 2003, I was subjected to continuous and merciless persecution from the defendant Town and their co-conspirator, defendant Mees.

29.     On April 10, 2003, when the raid occurred and the defendant Town's police invaded my premises, along with an ambulance, a fire truck, and several town officials, to inspect the premises, and confiscated documents, only to confirm that I was not in violation of the defendant Town's Code.  The raid served no purpose other than to humiliate, embarrass me and drive me off the premises.

30.     While the defendants had committed continuous, ongoing acts against me and my property, the April 10, 2003 raid was when I became aware that my equal protection rights under the law were being violated.

31.     It was as a result of the raid, that I realized the defendant Town would never prosecute the other similarly situated businesses in the area and that they would continue to operate without having the defendant's laws enforced against them.

32.     Even though other automotive shops were similarly situated in the area, I became aware in or about April 2003, that none of them were being investigated by the defendant Town, nor were any of them subject to violations, citations or any other adverse action by the defendants.

33.     Because the defendants prohibited me from pursuing use of my premises for the purposes of an automotive repair shop, I was forced to sell the property in August 2003.

34.   Based upon the foregoing, and together with my attorney's affirmation in opposition, I respectfully request that the Court deny defendant's Motion to Dismiss my complaint in its entirety.

**RICHARD ALFARO**

Sworn to before me this
2nd day of June 2006

Notary Public

CONCETTA M. RINALDI
Notary Public, State of New York
No. 02RI6106413
Qualified in Nassau County
Commission Expires 04/18/2008

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RICHARD ALFARO,

                                    Plaintiff,

                                                                        CV 06 1470

              -against-

BARBARA LABADOR, individually, BETH WICKEY,                             (Seybert) (Wall)
individually, ANN NOWAK, individually, HUBERT
PHILLIPS, individually, KEITH TUTHILL, individually,
PAUL HOULIHAN, individually, WILLIAM MEES,
individually, STEVEN FRANO, individually, JONATHAN
IRWIN, individually, "JOHN DOE" and "JANE DOE",
#1-5, 6-10, and 11-15 individually and personally
representing the fictitious or partially fictitious names
of individuals, whose full names are unknown to Plaintiff,
were at all relevant times herein, employees of the TOWN
OF SOUTHAMPTON BOARD MEMBERS comprising
THE SOUTHAMPTON ZONING BOARD OF APPEALS,
THE TOWN OF SOUTHAMPTON DEPARTMENT OF
LAND MANAGEMENT AND ZONING DIVISION,
and the TOWN OF SOUTHAMPTON,

                                    Defendants.
------------------------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTIONS TO DISMISS**
**PURSUANT TO FRCP 12(b)(6)**



                              Respectfully Submitted

                              PERRY & CAMPANELLI, LLP
                              Attorneys for plaintiff
                              RICHARD ALFARO
                              129 Front Street
                              Mineola, New York 11501
                              (516) 746-1600

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     I.    FED. R. CIV. P. 12(b)(6) AND
          SUMMARY JUDGMENT STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     II.    PLAINTIFF'S CAUSE OF ACTION COMMENCED
          WITHIN THE APPLICABLE STATUTE OF LIMITATIONS
          ARE TIMELY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     III.   PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA . . . . . . . . 19

     IV    THE DEFENDANTS HAVE FAILED TO PROPERLY PLEAD,
          RAISE AND/OR PROVE THAT THE DEFENSE OF QUALIFIED
          IMMUNITY APPLIES TO THEM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

     V.    DEFENDANT MEES IS A STATE ACTOR
          FOR PURPOSES OF A CLAIM UNDER § 1983 . . . . . . . . . . . . . . . . . . . . . . . 24

     VI.   THE COMPLAINT ADEQUATELY PLEADS A
          § 1985 CONSPIRACY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

     VII.  PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS
          A VIOLATION OF HIS EQUAL PROTECTION RIGHTS . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

i

## TABLE OF AUTHORITIES

Page

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bankers Trust Co. v. Rhoades, 859 F. 2d 1096 (2d Cir. 1988), *cert denied* . . . . . . . . . . . . . . . 11

Benigni v. City of Hemet, 853 F. 2d 1519 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Bernheim v. Litt, 79 F. 3d 318 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Blue v. Koren, 72 F. 3d 1075 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bray v. Alexandria Women's Health, et al., 506 U.S. 263, 113 S. Ct. 753,
122 L. Ed. 2d 34 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Cavanaugh v. Doherty, 243 A.D. 2d 92, 675 N.Y.S. 2d 143 (3d Dep't 1998) . . . . . . . . . . . . . 22

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Chase Securietis Corp. v. Donaldson, 325 U.S. 304 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Collard v. Incorporated Village of Flower Hill, 759 F. 2d 205 (2d Cir. 1985) . . . . . . . . . . 20-21

Connolly v. McCall, et al., 254 F. 3d 36 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cornwell v. Robinson et al., 23 F. 3d 694 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 14-15, 16

Cosmas v. Hassett, 886 F. 2d 8 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cotton v. Provident Life & Casualty Ins. Co., 951 F. Supp. 395 (E.D.N.Y. 1997) . . . . . . . . . . 11

Courson v. McMillan, 939 F. 2d 1479 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cox v. Kentuck Dep't of Transportation, 53 F. 3d 146 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . 13

Crawford-El v. Britton, 523 U.S. 574, 118 S. Ct. 1584 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Eagleston v. Guido, 41 F. 3d 865 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ii

Economou v. United States Dep't of Agriculture, 535 F. 2d 688 (2d Cir. 1976) . . . . . . . . . . . . 23

Gant v. Wallingford Bd. of Educ., 69 F. 3d 669 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 11

Goldman v. Belden, 754 F. 2d 1065 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gomez v. Toledo, 446 U.S. 635 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Hamilton v. Endell, 981 F. 2d 1062 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Havens Realty Corp. v. Coleman, et al., 455 U.S. 363, 102 S. Ct. 1114 (1981) . . . . . . . . . . . . 17

IUE AFL-CIO Pension Fund v. Hermann, F. 3d 1049 (2d Cir. 1993),
cert. denied, 513 U.S. 822 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Jacobsen v. Rose, 592 F. 2d 515 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Jackson v. Metropolitan Edison Co., 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974) . . . 24

Knight v. U.S. Fire Ins. Co., 804 F. 2d 9 (2d. Cir. 1986),
cert. denied, 480 U.S. 932 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

LaBounty v. Adler, 933 F. 2d 121 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Leeds v. Meltz, 85 F. 3d 51 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lewis v. Thompson, 252 F. 3d 590 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S. Ct. 2744 (1982) . . . . . . . . . . . . . . . . . 24, 26

Mazza v. Hendrick Hudson Central School District, 942 F. Supp. 187 (S.D.N.Y. 1996) . . . 11, 12

McCray v. Burrell, 516 F. 2d 357 (4th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Millar v. Ojima, et al., 354 F. Supp. 2d 220 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . 29, 31-32

Owens v. Okure, 488 U.S. 235, S. Ct. 573 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Poe v. Haydon, 853 F. 2d 418 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Quarantino v. Tiffany & Co., 71 F. 3d 58 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rheaume v. Texas Dep't of Public Safety, 666 F. 2d 925 (5th Cir. 1982) . . . . . . . . . . . . . . . . 22

iii

Rich v. Dollar, 841 F. 2d 1558 (11th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rini et al. v. Zwirn, 886 F. Supp. 270 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Samuels v. Mockry, 77 F. 3d 34 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Scheuer v. Rhodes, 416 U.S. 232 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 67 L. Ed. 340,
43 S. Ct. 190 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Skehan v. Bd. of Trustees of Bloomsburg College, 538 F. 2d 53 (3rd Cir. 1976) . . . . . . . . . . . 22

Soifer v. Bankers Trust Co., 490 U.S. 1007 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Soranno's Gasco v. Morgan, 874 F. 2d 1310 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350 (1918) . . . . . . . . . . . . . . . . . . . 30

Sundstrom v. Village of Arlington Heights, 826 F. Supp. 143 (N.D. Ill. 1993) . . . . . . . . . . . . . 12

Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F. 2d 566 (2d Cir. 1990) . . . . . . . . . 11

United States v. Carillo, 229 F. 3d 177 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Casamento, 887 F. 2d 1141 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Pitre, 960 F. 2d 1112 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Vargas v. The City of New York, 377 F. 3d 200 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

Village of Willbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000) . . . . . . . . . . . . . . . . . . . . 30

Villager Pond Inc. v. Town of Darien, 56 F. 3d 375 (2d Cir. 1995),
cert. denied, 519 U.S. 808 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

Willner v. Town of North Hempstead, et al., 977 F. Supp. 182 (E.D.N.Y. 1997) . . . . . 10-11, 13

Young v. Selsky, 41 F. 3d 47 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**Books**

Martin A. Schwartz, Section 1983 Litigation, Volume 1B, 378 (1997) . . . . . . . . . . . . . . . . . . . 12

iv

**Statutes**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

## PRELIMINARY STATEMENT

Plaintiff Richard Alfaro hereby submits this memorandum of law in opposition to defendants' motion to dismiss pursuant to FRCP (12)(b)(6).

Plaintiff has pled several causes of action which empower this Court to grant him relief under 42 U.S.C. §1983 and 42 U.S.C. §1985. The defendants, acting in concert, through an orchestrated conspiracy and under color of state law, over a period of several years, have deprived the plaintiff of rights, privileges and immunities as guaranteed under the Fourteenth Amendment of the United States Constitution, and have retaliated against plaintiff for the exercise of these federally protected rights. As such, plaintiff, is entitled to relief under both 42 U.S.C. §1983 and 42 U.S.C. §1985, and defendants' motions to dismiss should be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff Richard Alfaro commenced this action pursuant to 42 U.S.C. §1983 based upon a series of ongoing, continuous and violative acts, over a period of several years, committed by the defendants, in direct violation of plaintiff's due process and civil rights guaranteed under the Fourteenth Amendment.

Specifically, in or about August 1997, plaintiff Richard Alfaro, a hispanic business owner, commenced leasing the premises located at 674 Montauk Highway, East Quogue, New York, (hereinafter "subject premises") for purposes of operating an automobile shop.

At the time plaintiff commenced leasing said premises, he received from the lessor, a Certificate of Occupancy which allowed "one automobile repair garage" to operate on the subject premises. Based upon this, it was readily apparent that plaintiff would be able to lawfully operate his business free from harassment by the defendants.

Prior to relocating his business to the subject premises, plaintiff operated an automobile shop in Hampton Bays. Defendants, in a disingenuous attempt to throw plaintiff into an unfavorable light with this Court, falsely allege in their memorandum of law, that defendant Town filed a Complaint against plaintiff in 1996 for illegal use of the premises at 674 Montauk Highway, East Quogue, New York. (see ¶2 of defendant Town's memorandum of law at page 3). Defendant Town *never* filed a Complaint against plaintiff for illegal use of the <u>subject premises</u> prior to 2001.

Admittedly, plaintiff did receive a citation, in 1996, for the sale of used vehicles on his *prior premises,* at 163 Montauk Highway, Hampton Bays, New York. (see Exhibit "B" of defendant Town's Motion to Dismiss). Said summons is completely unrelated to this action and

2

irrelevant to plaintiff's claims.  In fact, in an attempt to comply with Town Law, plaintiff, immediately upon receipt of said summons, ceased the sale of used vehicles at 163 Montauk Highway, which resulted in a dismissal of the Complaint.  In a further attempt to abide by the defendant Town's laws, plaintiff sought to relocate his business to a more favorable location, which is how he came to occupy the subject premises.  If relevant at all, the prior summons issued to plaintiff is yet another example of how he has remained a constant target of the defendant Town, subject to persecution and selective enforcement of its laws against plaintiff, throughout the years.

Plaintiff chose to relocate to 674 Montauk Highway for two reasons: (1) the defendant Town suggested, in 1996, that he find a "better location" for his business; and (2) there were existing three other automotive shops in the vicinity, making it the ideal location for plaintiff's own automotive repair shop.

Specifically, there was an automotive shop located adjacent to plaintiff's property known as Hampton Brake and Muffler, which is owned by defendant Mees.  Across the street was situated an automotive repair shop known as Automagic East; and diagonal to plaintiff's premises there was a shop, "Loper's Equipment" also in the business of mechanical repairs.  All of these automotive repair shops operate without interference by the Town, in violation of the Town Code and without proper Certificates of Occupancy.  Yet, plaintiff Alfaro was the only individual targeted by defendant Town, for the very same violations committed by his neighbors.  Shockingly, plaintiff Alfaro had not yet commenced operation of his business at the time he received the Notice of Violation in 1997.

From October 1997 to April 10, 2003, plaintiff suffered a continuous and ongoing series

3

of violations by defendants.  The violations were an intimately connected series of events that amounted to one violation which came to fruition on April 10, 2003, in a massive raid by the defendants of the subject premises, at which time, plaintiff became aware of defendants' very intent to selectively enforce the laws of the Town of Southampton against plaintiff, in violation of plaintiff's civil rights.

Specifically, defendants, collectively under color of state law, and in furtherance of a conspiracy with a private individual, defendant William Mees, decided that plaintiff Alfaro, an hispanic, did not belong in the neighborhood, with other similarly situated businesses, and it was for this reason that the defendants sought to drive plaintiff out of the Town of Southampton.

Throughout plaintiff's occupancy of the premises, any act that plaintiff undertook to comply with the Town Law of Southampton, defendants assuredly took further steps to guarantee plaintiff would never lawfully operate his automotive repair shop.

The continuous series of violative acts committed by defendant Town began in 1997, when defendants wrongly issued a citation to plaintiff charging him with "changed illegal use of the premises."  However, plaintiff had yet to commence operation of his business, and therefore, the violation issued was completely invalid.

Nevertheless, in an attempt to cooperate with the defendants, plaintiff inquired of defendant Frano, the building inspector at the time, as to why he was issued this violation. Defendant Frano retorted with a statement illustrative of the defendant Town's intent to selectively enforce the laws of the Town against plaintiff: "you are on our agenda now, not the others."

But for the fact that plaintiff was a lessee of the subject premises and not the owner, he

4

had no standing to file for a special use permit until he became the title owner of the property. Therefore, in December 1999, plaintiff purchased the subject premises and within a matter of weeks, filed an application seeking a special use variance from the Town.   Plaintiff had no choice but to wait until after he became the  title owner of the subject premises to file said application for the special use of the property.

However, defendants would have this Court believe that plaintiff intentionally delayed in filing his application with the defendant Town's Zoning Board.  Defendants further suggest in their Memorandum of Law, that the egregious violations of his civil rights that plaintiff suffered were simply because of his own refusal to follow the defendant building inspector Frano's conspiracy-motivated advice to "find a new location." (See page 3 of defendant Town's Memorandum of Law).

However, plaintiff did not succumb to the defendants' scheme to drive him off the property by simply "finding a new location," which he had already done once before at the defendant Frano's suggestion, in 1996.  Instead, plaintiff took every step possible, over the years, to combat the defendants' efforts to selectively enforce the laws of Southampton against him.

Plaintiff Alfaro filed his application immediately for a variance, as soon as he became the title owner of said property.  Not surprisingly, he was subjected to an undue delay of his rights to due process by the defendant Town.  Specifically, plaintiff Alfaro's rights to due process were violated by the postponement of a hearing from the Zoning Board for over fourteen (14) months, from January 2000 to May 14, 2001, as admitted to by defendants in their memorandum of law. (See defendant Town's memorandum of Law at page 8).   Defendants' delay in issuing a decision on plaintiff's application for a special use variance is tantamount to depriving plaintiff of the use

5

of his property during those fourteen (14) months, as he was not permitted to operate his business, nor pursue his livelihood, during the pendency of the application.

As further evidence of the conspiracy by and between the defendant Town and defendant Mees is the very fact that, in February 2000, when plaintiff filed his application with the defendant Town's Zoning Board, defendant Mees immediately hired a private attorney to vehemently oppose plaintiff's zoning application.  Moreover, defendant Mees hired a former Town attorney, Douglas Penny, in a ploy to sway his former colleagues on the Zoning Board of Appeals to deny plaintiff's zoning application, upon which he was ultimately successful.  On May 17, 2001, defendant Town denied plaintiff's application for a special use variance.

However, prior to 2001, while his application was pending, while plaintiff occupied the premises next to defendant Mees, plaintiff had been subjected to a series of discriminatory acts by defendant Mees and specifically, endured numerous racial encounters with defendant Mees. At times, these encounters were in the presence of defendant Town members, who often frequented Mees' automotive adjacent to plaintiff's premises.  Notably, defendant Mees served as the personal mechanic to many of the named defendants.  During these verbal altercations, plaintiff Alfaro was subjected to racial slurs and threats by defendant Mees.

In June 2001, plaintiff filed an Article 78 proceeding to appeal the denial of the variance issued on May 17, 2001.  Although plaintiff believed that the Zoning Board's decision was unfair and appealable and that he was being "held to a higher standard than his neighbors", plaintiff was unaware, specifically, that the other automotive shops in the surrounding area, were not zoned to operate lawfully in the Town of Southampton.  While defendant Town points out in their opposition that plaintiff Alfaro knew at the time he filed the Article 78 proceeding that he

6

believed that he was being treated differently than the others in the area, ( defendant's
Memorandum of Law), plaintiff, at the time, was not specifically aware that the other similarly
situated automotive shops had been operating without the proper permits and Certificates of
Occupancy required by the Town Code.

Plaintiff Alfaro received an unfavorable decision on his Article 78 proceeding, and, as a
result, in a further attempt to protect his property interests, in November 2002, he instructed his
attorneys to file an appeal of the Article 78.  Plaintiff truly believed that the defendant Town
wrongly denied his application for a special use permit, especially in light of the fact that several
other identical businesses operated lawfully in the same exact district.  Plaintiff sought
vindication for the wrongs committed by the defendant Town by pursuing his administrative
remedies available by law, including the Article 78 proceeding and the appeal of same.

While waiting for his appeal to be heard, plaintiff received a telephone call from the
defendant Frano, in early April 2003, requesting an opportunity to inspect the subject premises to
ensure that plaintiff was not conducting any business therein.  Although plaintiff scheduled two
different appointments with the defendant Town to permit a lawful search of the premises, the
defendant Town never appeared.  Instead, defendant Town appeared by surprise, on April 10,
2003, without warning or notice to the plaintiff, with several police vehicles, and an ambulance,
and raided plaintiff's property, seized several boxes of records, stamps, money and other business
items.

This raid on April 10, 2003 resulted in the confiscation of several of plaintiff's
possessions, and was clearly in furtherance of the conspiracy by the defendants to drive plaintiff
out of business.  A raid, a search warrant, several police vehicles and an ambulance are clearly

7

excessive for a simple search to determine if plaintiff was conducting any business on the premises.  Defendants intentionally conducted the raid in such a manner to ensure that plaintiff was embarrassed, humiliated and moreover, intimidated to the point that plaintiff was driven off the property, which he sold in August 2003.

It was clear, also, by the manner in which the raid was conducted, that the defendants chose to selectively enforce the zoning laws against plaintiff Alfaro, and that none of the other similarly situated automobile shops, who were also operating in violation of the Town Code, were subject to such enforcement of the laws.  Defendant Frano articulated the defendant Town's selective enforcement policy against the plaintiff by stating: "you are on our agenda now, not the others." This clearly illustrated the defendant Town's intention and scheme to selectively enforce the laws as against plaintiff Alfaro, constituting a complete violation of his equal protection rights guaranteed under the Fourteenth Amendment.

**POINT I**

**FED.R.CIV.P. 12(b)(6) AND
SUMMARY JUDGMENT STANDARDS**

Although the defendants cite FRCP. 12(b)(6) as the basis for their motion to dismiss, the defendants are, in fact, seeking both dismissal under 12(b)(6) and, in the alternative, summary judgment based upon the affirmative defenses of absolute and/or qualified immunity. (See defendant Town's Memorandum of Law, Point V, page 18).

Since the Complaint has set forth factual allegations which, if proven, clearly give rise to an action under 42 U.S.C. §1983, the defendants cannot prevail under FRCP 12(b)(6). Furthermore, because the defendants have not, and cannot, demonstrate the absence of a genuine issue of fact, summary judgment dismissing the complaint must not be granted.

Moreover, the proper means by which to move for qualified immunity in this regard is to seek summary judgment pursuant to FRCP 56. Upon any motion for summary judgment pursuant to Rule 56, the defendants are required to submit a statement of facts, in accordance with Local Civil Rule 56.1, in which the movant is required to contend that there is no genuine issue of fact.

Apparently aware that they cannot, in good faith, represent to this Court that there is an absence of genuine issues of fact, the defendants attempt to circumvent Rule 56.1 by clothing summary judgment arguments, laden with contested factual issues, as arguments that the plaintiff has failed to state a claim. Since the defendants have failed to comply with FRCP 56.1, failed to state the proper basis of their motion, and failed to even purport that there exists no issues of fact, their motion should be denied in its entirety.

9

As stated by the U.S. Supreme Court:

> . . . a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions [] together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

> Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 1589 n.22 (1998)[citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) and FRCP 56(c)].

In his complaint, the plaintiff has set forth detailed allegations concerning the existence of his clearly established rights which are afforded protection under the U.S. Constitution (see Point VII infra), as well as factual allegations which, if proven, establish that:  (a) the defendants have violated these clearly established rights; and (b) having done so, they may not avail themselves of qualified immunity.

When considering a motion to dismiss, the factual allegations of the complaint must be accepted as true. Rini et al v. Zwirn, 886 F.Supp.270 (E.D.N.Y. 1995).   In addition, when determining a motion to dismiss a §1983 complaint pursuant to Rule 12 (b)(6), the court cannot dismiss the complaint unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Willner v. Town of North Hempstead, et al., 977 F.Supp. 182, 193 (E.D.N.Y. 1997).[1]  Significantly, as expressly stated by this very Court:

> It is not the Court's function to weigh the evidence that might be presented at trial; the Court must merely determine whether the complaint itself is legally sufficient, and in doing so, *it is well settled that the court must accept the allegations in the complaint as true and construe all reasonable inferences in favor of the plaintiff.* [citations omitted][emphasis added]

---

[1]*See also*, Goldman v. Belden, 754 F.2d 1065 (2d Cir. 1985); IUE AFL-CIO Pension Fund v. Hermann, 9 F.3d 1049, 1052-53 (2d Cir. 1993), *cert. denied*, 513 U.S. 822 (1994).

Willner, 977 F.Supp. at 186.[2]

The issue before the Court on a Rule 12(b)(6) motion is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence in support of its claim.[3] Recovery might even "appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6)." Willner, 977 F.Supp. at 186; Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995).

As for summary judgment, it may only be granted if the evidence, viewed in the light most favorable to the party opposing the motion, presents no issue of material fact. Cotton v. Provident Life & Casualty Ins. Co., 951 F.Supp. 395 (E.D.N.Y. 1997); Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Cotton, 951 F.Supp. at 395 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant summary judgment is unavailable." Cotton, 951 F.Supp. at 398 [emphasis added].

Furthermore, if, as alleged in the plaintiff'S complaint, the defendants

---

[2] See also, Leeds v. Meltz, 85 F.3d 51 (2d Cir. 1996); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1099 (2d Cir. 1988), cert. denied, Soifer v. Bankers Trust Co., 490 U.S. 1007 (1989); Mazza v. Hendrick Hudson Central School District, 942 F.Supp 187 (S.D.N.Y. 1996)[in deciding a motion to dismiss a plaintiff's §1983 action which claims retaliation for the exercise of First Amendment rights, the court confirmed that it was required to read the facts alleged in the complaint "generously," drawing all inferences in favor of the party opposing the motion]; Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989); Quarantino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995)[in considering a motion to dismiss, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the plaintiff, as the party opposing the motion]; Twin Laboratories, Inc. v. Weider Health & Fitness, 900 F.2d 566, 568 (2d Cir. 1990); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

[3] Willner, 977 F.Supp. at 186 [citing Villager Pond Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996)]; Mazza, 942 F.Supp at 187 [citing Scheuer, 416 U.S. at 232.

"retaliated" against the plaintiffs for having exercised their federally protected rights, the plaintiff will have established a violation of those rights and are therefore entitled to redress under 42 U.S.C. §1983.[4]

In the present action, the plaintiff has put forth significant factual allegations, as both direct and circumstantial evidence, that the defendants not only violated the plaintiff's rights, but that they further affirmatively and intentionally "singled him out" and attacked him in violation of his rights. Applying claims such as these to the law of the Second Circuit:

> . . .[T]he plaintiff should be permitted to oppose summary judgment with any particularized evidence of direct or circumstantial facts, *including expressions by the officials involved regarding their state of mind, circumstances suggesting in a substantial manner fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken* . . .

> [A] public official's motive or intent must be considered in the qualified immunity analysis where unlawful motivation or intent is a critical element of the alleged constitutional violation. Further, on the defendants' summary judgment-qualified immunity motion, although the plaintiff must produce some evidence of discriminatory intent, that evidence need not be direct: Circumstantial evidence is equally probative as direct evidence in proving illegitimate intent.

> Also direct evidence of improper motive is usually difficult, if not impossible, to obtain. Thus requiring direct evidence would effectively insulate from suit public officials who deny an improper motive.

> Martin A. Schwartz, Section 1983 Litigation, Volume 1B, 378-379 (1997)(citing Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995)) [emphasis added]

As aptly pointed out by Professor Schwartz, it is well established that when "intent" is an element of a plaintiff's constitutional claim, the plaintiff may rely upon circumstantial and inferential

---

[4]Bernheim v. Litt, 79 F.3d 318 (2d Cir. 1996); Mazza, 942 F.Supp. at 187; Sundstrom v. Village of Arlington Heights, 826 F.Supp. 1143 (N.D. Ill.1993); Soranno's Gasco v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).

evidence to defeat a qualified immunity summary judgment motion. <u>Cox v. Kentucky Dep't of Transportation</u>, 53 F.3d 146, 151 (6th Cir. 1995).

Although the plaintiff *has* suffered *significant* injuries as a direct result of the defendants' actions (as set forth hereinbelow), it must be noted that the U.S. Court of Appeals for the Second Circuit has explicitly recognized that where a constitutional deprivation is alleged, such as a §1983 claim, the plaintiff is entitled to redress, even in the absence of facts supporting an award of compensatory damages. <u>Bernheim v. Litt</u>, 79 F.3d 318 (2d Cir. 1996).

The plaintiffs have set forth sufficiently pleaded claims which, if proven, empower this court to grant relief under 42 U.S.C. §1983 for violations of the plaintiff's rights to equal protection and due process, as well as claims under §1985 for conspiracy to violate plaintiff's civil rights. Moreover, even if the plaintiffs had failed to sufficiently plead such claims, they have, at the very least, submitted factual allegations which "entitle" them to submit evidence of the constitutional violations alleged in the complaint. <u>Willner</u>, 977 F.Supp. at 193. Therefore, the defendants' motion to dismiss must be denied.

13

## POINT II

## PLAINTIFF'S CAUSE OF ACTION COMMENCED WITHIN <u>THE APPLICABLE STATUTE OF LIMITATIONS ARE TIMELY</u>

It is not in dispute that the statute of limitations for accrual of a claim under 42 U.S.C. §1983 is governed by individual state law and, in New York, the statute of limitations is three years. <u>Owens v. Okure</u>, 488 U.S. 235, 240, 109 S.Ct. 573 (1989); <u>Connolly v. McCall, et al</u>. 254 F.3d 36 (2d Cir. 2001).

However, there are two methods to determine the point in time from which the statute of limitations accrues. The first, and the method which defendants tenuously argue bars the instant claim, is that the claim accrues when the plaintiff knows or has reason to know of the harm. <u>Easgleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994).

The second method, and the one that fits squarely within the purview of the case at bar, is New York's continuing violation requirement, as articulated by the Court in <u>Cornwell v. Robinson, et al.</u>, 23 F.3d 694 (2d Cir. 1994). Specifically, the Second Circuit held that:

> While generally a claim accrues once a plaintiff knows or has reason to know of the injury which is the basis of his action, if a plaintiff experiences a "continuous practice and policy of discrimination, the commencement of the statute of limitations may be delayed until the *last discriminatory act in furtherance of it*." (emphasis added)

<u>Cornwell</u>, supra, 23 F.3d at 704.

Additionally, the Court explained that:

> When a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was

14

a part of that violation, even conduct that occurred outside
the limitations period.

Cornwell, supra, 23 F.3d at 705.

Here, plaintiff Alfaro commenced leasing the premises in August 1997, and within one month, received a citation for a violation from the defendant Town. Immediately thereafter, upon purchasing the subject premises, as title owner, at the first opportunity available to plaintiff, he filed for a special use variance with defendant Town. Plaintiff was made to wait over one year for a decision from the defendant Town.

In the meantime, while his application was pending before the Zoning Board, four other businesses, specifically automotive repair shops, in the same exact area, within feet of plaintiff's premises, were permitted to continue use of their premises as automotive shops, without any enforcement against them by the defendant Town. These automotive shops were also in violation of the Town Code, and, plaintiff later discovered, that none of these businesses had the proper Certificates of Occupancy allowing them to operate lawfully in the "Village Business"district of Southampton.

Additionally, plaintiff Alfaro's civil rights were continuously subjected to violations by the actions of his neighbor, defendant William Mees, in furtherance of the conspiracy between him and the Town to drive Alfaro off the premises and out of Southampton. Defendant Mees consistently issued racial slurs to plaintiff Alfaro, trespassed on his premises and illustrated an overriding hatred for plaintiff Alfaro. On numerous occasions, the verbal tirades by defendant Mees were in the presence of defendant Town members. Defendant Mees' actions were in concert with the defendant Town's affirmative actions to eject only plaintiff and not the other violators  from the Town.

15

Moreover, plaintiff Alfaro's application before the Zoning Board remained pending for over one year, during which time, he received numerous visits from defendant Town members, advising him that he was "on the agenda, not the others in the area."  Defendants should not receive the benefit of claiming that the statute of limitations is now expired based upon their very own delays prevalent in this instant case.

The aforesaid facts of this case demonstrate that the plethora of actions constituting a violation of plaintiff's civil rights were ongoing, serial and immeasurably intertwined.  During plaintiff's occupation of the subject premises, it cannot be even arguably possible, that the statute of limitations began to accrue at a specific point in time for plaintiff's §1983 claims.  The reason for this is that over a period of six years, from 1997 to 2003, plaintiff was continually subjected to violation of his civil rights by the selective enforcement of the laws against him and not the others.

The Court in <u>Cornwell</u>, *supra,* held that the statute of limitations, under the continuous violation theory, is measured from the last act of discrimination.  Here, the last act of discrimination occurred on April 10, 2003, when the defendant Town raided plaintiff's premises, in such an egregious and hostile manner, by invading the premises with several police officers, accompanied by ambulances, a fire truck, and several members of the defendant Town.

This raid, while lawful, constituted an exacerbation of the civil rights violations plaintiff had already endured.  No other automotive shop in the area was subject to such a raid, because <u>no other business had been cited</u> for their continuous and ongoing violation of the Town Code of operating an automotive shop in a prohibited area and without the proper Certificates of Occupancy.  This raid was yet another example of the selective enforcement policy employed by the defendant Town to enforce the laws of the Town against only the plaintiff and none of the other businesses, in violation

of plaintiff's civil rights and equal protection of the law.

The very purpose of 'statutes of limitations' is to keep stale claims out of Court.  If the challenged violation is a continuing one, the staleness concern disappears, especially in light of continuous acts as being treated differently from 'one discrete act of discrimination.'  Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314 (1945);  Havens Realty Corp. v. Coleman, et al., 455 U.S. 363; 102 S. Ct. 1114 (1981)

There was not one discrete act of discrimination in this case, but rather, a series of discriminatory acts over the course of six years.  Therefore, because plaintiff experienced  the continuous practice and policy of discrimination by the defendants, plaintiff is entitled to invoke the continuing violations statute of limitations.  The raid occurred on April 10, 2003, and therefore, the statute of limitations expired on April 10, 2006.  Because the complaint was filed on March 30, 2006, plaintiff's equal protection claims under §1983 and §1985 were timely commenced.

While the correct measure of the statute of limitations under this case is that under the continuing violation, should the Court determine that the appropriate measure of time is from when the plaintiff knew or should have known the harm to him, as defendants wrongly assert, it is respectfully submitted that the proper date under this theory is April 10, 2003 as well.  Prior to April 10, 2003, plaintiff Alfaro, plaintiff did not know how he was being treated differently than the other businesses similarly situated.

Subsequent to experiencing the aggressive raid on his premises and researching the other automotive shops in the area, plaintiff became aware, on April 10, 2003, that he was the only person being targeted by the defendant Town and because of this, the laws were being selectively enforced against him and none of the others.  At this point, plaintiff acknowledges that he became aware that

his rights under equal protection of the laws were being violated.  (See plaintiff affidavit annexed as Exhibit "A" to plaintiff's Affirmation in Opposition).

Therefore, it is readily apparent, that contrary to the defendants' arguments that this is an untimely claim under §1983, as illustrated above, plaintiff timely filed his complaint, and therefore, plaintiff's causes of actions should be sustained and, further, defendants' motion to dismiss should be denied in its entirety.

# POINT III

## <u>PLAINTIFF'S CLAIMS ARE NOT BARRED BY RES JUDICATA</u>

Plaintiff's claims contained in the complaint for violation of plaintiff's civil rights and equal protection of the laws pursuant to  42 U.S.C. §1983 were raised for the very first time in the Complaint filed on March 30, 2006, and as such, it is impossible for such claims be barred by the doctrine of res judicata.

Defendants submit that because plaintiff filed an Article 78 proceeding challenging the Zoning Board's decision in 2001, and he did not raise his equal protection claims in that proceeding, that plaintiff is presently barred from seeking relief herein.  Based upon the following, defendants arguments must fail.

The rule of law to determine whether a §1983 claim may be barred by res judicata in which there was a prior state court proceeding has been set forth in the Second Circuit's ruling in <u>Vargas v. The City of New York</u>, 377 F.3d 200 (2004).  In *Vargas*, the plaintiff was a city police officer, challenging the police department's policy of racial discrimination, and based upon that, selective enforcement of disciplinary rules against officers of black and hispanic dissent.  Plaintiff did not raise his equal protection and due process claim in the previous Article 78 proceeding in state court, in which he sought review of an administrative determination charging him with use of excessive force.  The Article 78 upheld the City's administrative decision and dismissed plaintiff's proceeding.

In <u>Vargas</u>, plaintiff, after losing the Article 78, commenced a federal action against the City, alleging equal protection and civil rights violations under §1983.  Defendants in that federal

action argued that plaintiff should be precluded from bringing such an action based upon res

judicata, in that plaintiff had the opportunity to raise the issues in his previous Article 78.  The

Second Circuit held that, under New York law, where there has been a prior unsuccessful Article

78 proceeding, plaintiff, asserting §1983 claims in a subsequent federal court action, is not

precluded from bringing such an action, because the state court does not have the power to award

the full measure of relief available in a subsequent 1983 action.  Vargas at 205.

The Court additionally held, that even if the issue of discrimination had been raised in the

lower court, unless it was 'necessarily and actually decided' then there is no bar to a

discrimination claim in a subsequent federal action.  Vargas at 206.

The case at bar falls directly within the Second Circuit's holding in Vargas.  Although

plaintiff did file an Article 78 proceeding challenging the administrative decision issued by the

Zoning Board, it was limited to a review of the lawfulness of that determination, and not with

regards to his equal protection or civil rights claims.  Even though plaintiff Alfaro noted in his

affidavit in the Article 78 that he was being treated differently, plaintiff was not aware that the

disparate treatment gave rise to an equal protection claim in 2001, the year in which he filed the

Article 78.

Moreover the selective enforcement of the laws against plaintiff, coupled with the

discrimination against him, as set forth above, continued for a period greater than two years after

the Article 78 was commenced, and therefore such claims would not have been ripe for

adjudication at the time plaintiff had filed the Article 78.

Defendants, on page nine (9) of their memorandum of law, cite to a case, Collard v.

Incorporated Village of Flower Hill, 759 F.2d 205 (2d Cir. 1985).  In Collard, plaintiffs filed an

Article 78 challenging a zoning board decision, and simultaneously, on the exact same date, filed a complaint in Federal District Court, claiming a violation of their civil rights.  Defendants' reliance on the *Collard* holding is completely misplaced  as *Collard* clearly differs from the case at bar.   The *Collard* plaintiffs filed two complaints challenging the same decision in two different courts, however, seeking similar relief.  In the instant matter, plaintiff Alfaro filed his Article 78, challenging the Zoning Board's decision as arbitrary and capricious, and then sought an appeal after that case was dismissed.  While the Article 78 and the appeal of same was pending, plaintiff continued to experience the discriminatory acts of the defendants, both the racial discrimination and the respective selective enforcement committed by the defendants.

Because these issues were not ripe for adjudication, and to the extent that plaintiff was not aware that the defendant Town sought to enforce the laws as against him solely, plaintiff was not in a position to assert his equal protection and civil rights claim at that time. (See affidavit of plaintiff Alfaro annexed to plaintiff's Affirmation in Opposition).

Therefore, based upon the application of well settled law set forth by the *Vargas* Court, plaintiff's claims should be sustained as they are not barred by res judicata.

21

## POINT IV

## THE DEFENDANTS HAVE FAILED TO PROPERLY PLEAD,
## RAISE AND/OR PROVE THAT THE DEFENSE
## OF QUALIFIED IMMUNITY APPLIES TO THEM

In order for the burden to shift to the plaintiff to disprove qualified immunity, the defendants must adequately plead and prove that they were acting within the scope of their authority and in their official capacity.[5]  Moreover, since qualified immunity is an affirmative defense, governmental defendants must also plead and prove that they acted in "good faith." Gomez v. Toledo, 446 U.S. 635 (1980).[6]  To meet this burden, each of the defendants are required to establish "that he [or she] had an objectively reasonable belief that his [or her] acts violated no clearly established rights." Young v. Selsky, 41 F.3d 47, 54 (2d Cir.1994).

In their current motion, none of the defendants have properly alleged, much less proven, that, with regard to their conduct described in the complaint, they were acting within the scope of their duties, capacity or authority, or that they acted in good faith.  It is impossible to establish that defendants, the majority of whom are zoning board members, or town employees, empowered with the ability to enforce the zoning laws, did not have knowledge that the other similarly situated businesses were in violation of the Town's Town Code.  None of the surrounding businesses, all of which are described herein above and in the Complaint, operated lawfully and

---

[5]  Cavanaugh v. Doherty, 243 A.D.2d 92, 675 N.Y.S.2d 143 (3d Dep't 1998); Rheaume v. Texas Dep't of Public Safety, 666 F.2d 925 (5th Cir. 1982); Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988); Courson v. McMillian, 939 F.2d. 1479 (11th Cir. 1991); Poe v. Haydon, 853 F.2d 418 (6th Cir. 1988).

[6]See also, Hamilton v. Endell, 981 F.2d 1062 (9th Cir. 1992)(qualified immunity is an affirmative defense which must be proven by government official); Benigni v. City of Hemet, 853 F.2d 1519 (9th Cir. 1988)(government official must plead and prove good faith); Skehan v. Bd. of Trustees of Bloomsburg College, 538 F.2d 53 (3d Cir. 1976)(same); Jacobsen v. Rose, 592 F.2d 515 (9th Cir. 1978)(same); McCray v. Burrell, 516 F.2d 357 (4th Cir. 1974).

with the proper permits/Certificate of Occupancies.  Yet these similarly situated businesses were not the subject of defendant Town's enforcement of the laws; only plaintiff was.

Having failed to submit, much less prove, a factual record establishing good faith and the scope of their respective authorities, the defendants have failed to establish their entitlement to this affirmative defense.  As such, this Court cannot dispose of the plaintiffs' case against any of the respective defendants.  Economou v. United States Dep't of Agriculture, 535 F.2d 688 (2d Cir. 1976); Scheuer v. Rhodes, 416 U.S. 232 (1974).  In addition, since the plaintiffs have set forth sufficient factual allegations evidencing a lack of good faith and intentional violations of their constitutional rights, they are entitled to offer evidence in support of their claims (Villager Pond Inc. v. Town of Darien, 56 F.3d 375  (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996).

**POINT V**

**DEFENDANT MEES IS A STATE ACTOR
FOR PURPOSES OF A CLAIM UNDER  § 1983**

It is well settled law that the test established by the Supreme Court to determine whether a private individual may be liable under §1983 as a private actor is based upon the close nexus between the State and the challenged action, and that seemingly private behavior "may be fairly treated as that of the State itself  Jackson v. Metropolitan Edison Co. 419 U.S. 345, 351, 42 L. Ed.2d 477, 95 S. Ct. 449 (1974).

While it is true that private individuals are typically protected from exposure to §1983 liability absent a showing of a 'close-nexus,' the Supreme Court expanded upon this, when the elements of a conspiracy are present.  The Supreme Court, in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S. Ct. 2744 (1982) expanded the Jackson, Id., decision by stating:

> "The two part approach to a 1983 cause of action [...] was derived from Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).  Adickes was a §1983 action bought against a private party, based on a claim of racial discrimination in violation of the Equal Protection clause of the Fourteenth Amendment. Although stating that the §1983 plaintiff must show both that he has been deprived of a right secured by the Constitution and the laws of the Unites States and the defendant acted under color of any statute of any State, we held that the private party's joint participation with a state official in a conspiracy to discriminate would constitute both state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights and action under color of state law for purposes of the statute.  In support of our conclusion that a private party held to have violated the Fourteenth Amendment can be liable under 1983, we cited that part of United States v. Price, 383 U.S. 794, in which we concluded that state action and action under color of state law are the same."

Lugar, Supra, at 932.

24

Here, defendant Mees, is clearly a state actor based upon his joint participation with the officials of the Town of Southampton, in order to violate plaintiff's rights to equal protection under the Fourteenth Amendment.  Defendant Mees, in furtherance of the conspiracy to selectively enforce the laws against plaintiff and racially discriminate against him, spewed a multitude of racial slurs at plaintiff in the presence of defendant Town officials.  Additionally, defendant Mees' joint participation is clearly illustrated by Mees hiring a former Town attorney to represent him to vehemently oppose the plaintiff's application before the Town's Zoning Board for a special use variance. All of these actions took place over a period of time during which plaintiff Alfaro observed the individually named defendants frequent defendant Mees' automotive shop on a regular basis, and which often times, he was subjected to racial comments from defendant Mees or threats by defendant Town.

By way of example, defendant Frano informed plaintiff Alfaro, in the presence of defendant Mees, "you are on our agenda now, not the others."  This is yet another example of how the defendant Town had no interest in prosecuting their co-conspirator Mees, the defendant Town's personal mechanic, whom also remained and continues to remain in violation of the Town Code.

The very fact that defendant Mees sought to oppose plaintiff Alfaro's zoning application, while defendant Mees, himself, remained in violation of the very same provisions of the Town Code, supports the existence of an agreement by and between the defendants.  Defendant Mees could have had no other motivation to oppose plaintiff Alfaro's complaint, especially in light of the fact that it may draw attention to his own violative behavior, but for the fact that it furthered the conspiracy by and between himself and the defendant Town, and his desire to drive plaintiff

25

off the subject premises.

Therefore, under the Court's holding in <u>Lugar</u>, *supra*, it is clear that defendant Mees jointly participated in selectively enforcing the laws of the Town of Southampton against plaintiff Alfaro, because he was hispanic and, additionally, because he was a direct competitor of defendant Mees, and based upon this, should be considered a state actor under §1983.

**POINT VI**

**THE COMPLAINT ADEQUATELY PLEADS A §1985 CONSPIRACY**

The law is clear, that, in order to allege conspiracy, plaintiff must demonstrate (a) a conspiracy, (2) for the purpose of depriving a person [...] of the equal protection of the laws or equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy and (4) injury to plaintiff's property or a deprivation of rights or privilege of a citizen of the United States. Bray v. Alexandria Women's Health, et al. 506 U.S. 263; 113 S. Ct 753; 122 L.Ed 2d 34 (1993).

It is further well established that a conspiracy may be proven purely through circumstantial evidence. United States v. Pitre, 960 F.2d 1112, 1121 (2d Cir. 1992). Because the very nature of a conspiracy is secretive, it is the rare case where "all acts of a conspiracy can be laid bare in court with the precision of a surgeon's scapel." United States v. Casamento, 887 F.2d 1141, 1156 (2d Cir. 1989).

To establish element one, the conspiracy in the instant case is by and between defendant Mees and defendant Town, and the individually named defendants, all of whom are employees of the Town, and therefore, acted under color of state law. In satisfaction of element two listed above, the purpose of the conspiracy was to selectively enforce the laws of the Town Code against plaintiff Alfaro, a hispanic, individually, without effect to the others similarly situated, and also in violation of the Town Code, as is described in the Complaint (see Count V of the Complaint).

Element three requires the identification of an overt act in furtherance of the conspiracy. Several overt acts were committed by each of the conspirators at various times throughout

27

plaintiff's occupation of the subject premises.   Clear examples of such overt acts include: the statement by defendant Frano wherein he told plaintiff that "you are on our agenda not the others," the issuance of multiple citations against plaintiff and none of the other similarly situated businesses and the ultimate denial of plaintiff's zoning application for a special use permit.   The overt act by conspirator Mees in furtherance of the conspiracy, was that he hired an attorney to assist defendant Town in quashing plaintiff's application.

The general principle with regard to an overt act in furtherance of a conspiracy is that the overt act only need be committed by one of the conspirators.   United States v. Carillo, 229 F.3d 177 (2d Cir. 2000).   The overt acts by each of the co-conspirators, as stated above, clearly establishes that a conspiracy existed and, moreover, was successfully executed.

Finally, the injury sustained by plaintiff was that he was deprived equal protection of the laws as guaranteed under the Fourteenth amendment, since he was the only business owner against which the defendants sought to selectively enforce the Town's laws.

As described above, all of the facts in the instant case and contained therein, establish the elements necessary to prove a conspiracy in violation of plaintiff's civil rights as set forth in 42 U.S.C. §1985(3).

28

## POINT VII

### PLAINTIFF'S COMPLAINT ADEQUATELY PLEADS
### A VIOLATION OF HIS EQUAL PROTECTION RIGHTS

_____The purpose of the equal protection clause of the Fourteenth Amendment is under 42

U.S.C. §1983 is to protect individuals from governmental interference with a "fundamental right"

or a violation by a state of their federal right. Millar v. Ojima, et al., 354 F. Supp. 2d 220

(E.D.N.Y 2005), *citing* Lewis v. Thompson, 252 F.3d 590 (2d Cir. 2001).  Discriminatory

treatment by government officials is sufficient to trigger assessment under the Equal Protection

clause.  Id. at 227.

In the instant case, discriminatory treatment was committed by co-conspirator defendant

William Mees, by the statements and actions taken against plaintiff Alfaro from 1997 through and

including 2003, as described above.  Specifically, and at various times, defendant Mees spewed

racial obscenities and threatened plaintiff Alfaro, all of which were because of his hispanic

ancestry.  Such racial discrimination, which was the motivation behind enforcement of the laws of

the Town of Southampton against plaintiff and no other business similarly situated is sufficient

grounds for an equal protection claim.  Even, *assuming arguendo*, that defendant Mees is not

considered a state actor, (as set forth in Point V, *infra*), he remains liable as a co-conspirator

because a conspiracy under §1985(3) is permissible between a state actor, the defendant Town and

a private individual, defendant Mees.

_____It is clear that plaintiff Alfaro has a sufficient claim that the laws of the Town of

Southampton were selectively enforced against him, and no others similarly situated, based upon

the fact that he is hispanic and such selective enforcement was racially motivated, in violation of

42 U.S.C. §1983.

However, should the Court find that there is not sufficient evidence to sustain a §1983 claim based upon a violation of equal protection that is racially motivated, at the very least, absent a suspect class, plaintiff is a "a class of one" and based upon this, was discriminated against. Village of Willbrook v. Olech, 528 U.S. 562, 120 S.Ct. 1073 (2000).

In the Village of Willbrook decision, the Supreme Court held that several successful equal protection claims brought by a class of one where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. [7]

By way of example, the plaintiffs in the Village of Willowbrook, who sought to connect their property to the municipal water supply, were required to provide a 33 foot easement, wherein the Village required from other similarly situated property owners, only a 15 foot easement. Plaintiffs then commenced an action seeking damages in that the requirements by the Village violated the Equal Protection Clause of the Fourteenth Amendment.

The lower court in Village of Willobrook dismissed the action against the Village. However on appeal, the Court of Appeals for the Seventh Circuit reversed, holding that plaintiffs were considered a "class of one" and the complaint sufficiently alleged a violation of equal protection as the state action was wholly unrelated to any legitimate state objective, which was affirmed on appeal to the Supreme Court. Id at 563.

The holding in Village of Willowbrook falls squarely within the purview of the case at bar.

---

[7]

See also, Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 67 L.Ed. 340, 43 S. Ct. 190 (1923); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350 (1918).

Plaintiff Alfaro owned property, for which he purchased for the purposes of operating an automotive repair shop, in a vicinity wherein there were several similarly situated businesses. None of the other businesses were allowed to operate automotive shops in that vicinity based upon the provisions of the Town Code, yet they continuously operated for years without harassment from defendant Town.  But, as soon as plaintiff Alfaro sought to operate his business, one which was similar to those in the surrounding community, he was stopped in every which way possible by the Town.  First, he received a citation from the defendant Town that he was in violation of the Town Code, when others similarly situated continued to operate their automotive shops, without receiving any notice or citation from the Town.

Second, upon trying to comply with the defendant Town's Code by his application to the defendant Town for a special use permit, the plaintiff's application was unsurprisingly denied outright by the defendant Town in their May 17, 2001 decision, which cited to Town Law prohibiting automotive repair shops in the business district where plaintiff's property was located. Yet, to this day, three other automotive repair shops continue to operate without receiving citations or violations from the Town and, subsequently, ordered to shut down.

Finally, plaintiff Alfaro was subjected to an aggressive raid of his premises by the defendant Town in furtherance of their selective enforcement of the laws against only him.

Based upon the aforesaid, it is apparent that there is no clearer example than the one herein of a plaintiff who is entitled to be treated as a "class of one."

In fact, the Court in Millar v. Ojima, 354. F. Supp. 220, explained that:

> "Class of one claims typically arise in the context of cases
> involving enforcement of zoning regulations when an individual
> is denied a permit while other individuals who are similarly situated

are granted the benefit."

Id. at 228.

This instant case is a paradigm of the type of plaintiffs upon which class of one claims are routinely founded.  Plaintiff Alfaro has been subjected to the bad faith of the defendant Town, in their selective enforcement of the laws against plaintiff, based upon defendants' personal animous toward him, especially in light of the fact that plaintiff would have been a direct competitor of town crony and personal mechanic, defendant Mees.

It, therefore, requires no stretch of the imagination as to why the defendant Town sought to selectively enforce the zoning laws of the Town of Southampton solely against plaintiff Alfaro and none of the other automotive shops in the vicinity, especially defendant Mees.

Summarily, it is quite obvious that plaintiff Alfaro is an ideal "class of one" plaintiff, and based upon the foregoing, has sufficiently pled a violation of his equal protection rights guaranteed under the Fourteenth Amendment.

## CONCLUSION

For the reasons set forth in this memorandum of law, plaintiff is entitled to seek redress against the defendants pursuant to 42 U.S.C. § 1983, and defendants' motions seeking dismissal under FRCP 12 (b)(6) should be denied in their entirety.

**PERRY & CAMPANELLI, LLP**
Attorneys for Plaintiff

By: _____
Concetta M. Rinaldi, Esq. (CR 0457)
129 Front Street
Mineola, New York 11501
516-746-1600

33