UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
RICHARD ALFARO,

                Plaintiff,

      -against-                        <u>ORDER</u>
                                        06-CV-1470(JS)(WDW)
BARBARA LABADOR, individually, BETH
WICKEY, individually, ANN NOWAK,
individually, HUBERT PHILLIPS, individually,
KEITH TUTHILL, individually, PAUL HOULIHAN,
individually, WILLIAM MEES, individually,
STEVEN FRANO, individually, JONATHAN IRWIN,
individually, "JOHN DOE" and "JANE DOE",
#1-5, 6-10, and 11-15 individually and
personally representing the fictitious or
partially fictitious names of individuals,
whose names are unknown to Plaintiff, were
at all relevant time herein, employees of
the TOWN OF SOUTHAMPTON BOARD MEMBERS
comprising THE SOUTHAMPTON ZONING BOARD OF
APPEALS, THE TOWN OF SOUTHAMPTON DEPARTMENT
OF LAND MANAGEMENT AND ZONING DIVISION, and
the TOWN OF SOUTHAMPTON,

                Defendants.

----------------------------------------X
APPEARANCES:

For Plaintiff:      Concetta M. Rinaldi, Esq.
                Andrew J. Campanelli, Esq.
                Perry & Campanelli, LLP
                129 Front Street
                Mineola, New York 11501

For Defendants:

For William Mees:  Robert Howard Cabble, Esq.
                Kral, Clerkin, Redmond, Ryan, Perry & Girvan
                69 East Jericho Turnpike
                Mineola, New York 11501

For Remaining
Defendants:          Jeltje DeJong, Esq.

Devitt Spellman Barrett LLP
50 Route 111
Smithtown, New York 11787

SEYBERT, District Judge:

### INTRODUCTION

Pending before the Court are two motions to dismiss brought by Defendant William Mees ("Mees") and the remaining Defendants ("Town Defendants") (collectively referred to as "Defendant"). For the reasons below, the Court DENIES in part and GRANTS in part the Town Defendants' motion to dismiss and DENIES in its entirety Mees' motion to dismiss.

### BACKGROUND

In August 1999, Plaintiff, Richard Alfaro ("Plaintiff"), began operating an automotive repair business called Alfaro Motors at 674 Montauk Highway, in East Quogue, New York ("Property"). (Complaint ("Compl.") ¶ 2.) The Property is in the business district of the Town of Southampton ("Town"), surrounded by other commercial businesses, including two other automotive repair shops. (Id.) One of the other auto repair shops, owned and operated by Mees, is adjacent to the Property and personally serves the needs of some of the individual co-Defendants. (Id. ¶¶ 3-4.) The other auto repair shop – called Automagic East ("Automagic") is owned and operated by two Caucasian individuals. (Id. ¶ 15.)

Automagic is located in the same area that the Town Code

2

of Southampton ("Town Code") allegedly prohibits automotive shops. (Id. ¶ 16.) Defendants never cited Automagic for illegal use of the premises as an automotive shop. (Id. ¶ 17.) Both Automagic and Mees's auto repair shop operate without certification - the same certification for which the Town closed down Plaintiff's auto repair shop. (Id. ¶¶ 18, 31.)

Diagonally across from Plaintiff's auto repair shop is a commercial property zoned for "retail pharmacy." (Id. ¶ 19.) A retail pharmacy does not run on that property; instead, a business that sells and repairs lawn and yard equipment operates there. (Id. ¶ 20.) The property owner has never been cited for operating without the proper certificate of occupancy. (Id. ¶ 20.)

Another property adjacent to the Property contains a dwelling used by four residential tenants and four commercial tenants. However, that property's certificate of occupancy allows for only a one family residential dwelling. (Id. ¶ 24.)

All the aforementioned properties are adjacent to Plaintiff's Property, and all run without proper certificates in violation of the Town Code. (Id. ¶ 33.) Plaintiff is the only individual of Hispanic ancestry and the only business owner held liable by the Town for purported violations . (Id. ¶¶ 34, 18, 31.)

Mees evinced a strong hatred toward Plaintiff that was racially motivated. (Id. ¶ 36.) Mees trespassed upon Plaintiff's

3

Property, and he parked cars all over the Property.  (<u>Id.</u> ¶ 42.) During a heated discussion about Mees's trespassing, Mees screamed at Plaintiff, "You are nothing more than a spic bastard and you will be out of here before long." (<u>Id.</u> ¶ 45.)

Plaintiff alleges that Defendants intentionally prevented Plaintiff from operating his auto repair business and competing with Mees, whose auto repair shop personally serves the needs of some of the individual co-Defendants.  (<u>Id.</u> ¶ 4.)  Defendants also allegedly engaged in unlawful, arbitrary, capricious, and malicious conduct, in furtherance of a conspiracy to violate Plaintiff's rights.  (<u>Id.</u> ¶ 5.)  In furtherance of the conspiracy, Defendants sent building inspectors to the Property in September 1997 and had notices of violations sent to Plaintiff in October 1997.  (<u>Id.</u> ¶¶ 50, 55.)

When Plaintiff confronted Defendant Steven Frano about why he was being "targeted," Frano responded, "You are the one on our agenda now, not the others." (<u>Id.</u> ¶ 61.)  During the next five years, Plaintiff did not operate an auto repair shop on his Property.  (<u>Id.</u> ¶ 63.)  Plaintiff found out that the previous owner of the Property had repaired cars on the Property.  (<u>Id.</u> ¶ 72.)  In 2000, Plaintiff applied for a special use permit.  (<u>Id.</u> ¶ 78.) After three adjourned hearings and more than one year later, Defendants denied Plaintiff's application stating that the Property

4

could not be operated as an auto repair shop.  (<u>Id.</u> ¶¶ 79-84.)

Plaintiff filed an Article 78 proceeding in state court, but he ultimately lost.  (<u>Id.</u> ¶¶ 86-87.)  In 2003, Mees again called Plaintiff a "spic."  (<u>Id.</u> ¶¶ 89-90.)  On April 10, 2003, at least a dozen law enforcement officers searched Plaintiff's Property ("April 10 Raid").  (<u>Id.</u> ¶ 94.)  During the search, the officers seized $300 in cash and several business records concerning Plaintiff's other auto repair business located in Riverhead.  (<u>Id.</u> ¶¶ 94-95.)  After the numerous problems with Mees, the Town, and discriminatory treatment, Plaintiff sold the Property and vacated the land in August 2004.  (<u>Id.</u> ¶ 100.)

Because of Defendants' conspiracy and unlawful actions that violated Plaintiff's civil rights, Plaintiff suffered monetary loss because he was unable to operate his business for a five-year period.  (<u>Id.</u> ¶ 101.)  Plaintiff also suffered humiliation and embarrassment due to Defendants' overt acts to drive him from the Property, all while Mees and adjacent property owners ran their businesses without disruption.  (<u>Id.</u> ¶ 102.)

Plaintiff filed suit on March 30, 2006.  The Complaint alleges claims under sections 1983 and 1985, for due process and equal protection violations and for conspiracy.  He seeks over $25,000,000 in damages, attorneys' fees, and costs.

## STANDARD OF REVIEW

A district court should not grant a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Sec. Investor Prot. Corp. v. BDO Seidman, 222 F.3d 63, 69 (2d Cir. 2000) (quoting Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)). When applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the Plaintiff, as well as accept these factual allegations as true. H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). Moreover, the court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (quoting Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff and accept these factual allegations as true. H.J. Inc., 492 U.S. at 249; see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165,

6

113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993) (noting the Federal Rules' liberal system of notice pleading).  The appropriate inquiry, therefore, is not whether a plaintiff's claims are ultimately meritorious, but whether the plaintiff is entitled to offer evidence to support them.  See Ricciuti v. N.Y. City Transit Auth., 941 F.2d 119, 123-24 (2d Cir. 1991) (stating plaintiff is not compelled to prove his or her case at the pleading stage).

Additionally, a plaintiff is not required to set out in detail the facts upon which he or she bases a claim.  Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).  A plaintiff need only give a statement of his or her claim that will give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Id.  Therefore, where a complaint is filed that charges each element necessary to recover, the dismissal of the case for failure to set out evidential facts can seldom be warranted.  See United States v. Employment Plasterers' Ass'n, 347 U.S. 186, 189, 74 S. Ct. 452, 98 L. Ed. 618 (1954).

This Court, as well as other courts in the Eastern District of New York have held that the pleading requirements still require some factual support that provides notice to a defendant as to what the basic events and circumstances are that a plaintiff complains of.  See Mehrhoff v. William Floyd Union Free Sch. Dist., No. 04-CV-3850, 2005 WL 2077292 (E.D.N.Y. Aug. 22, 2005); Straker

7

v. Metro. Transit Auth., 333 F. Supp. 2d 91, 98 (E.D.N.Y. 2004).
As with all complaints, the allegations must provide some bare
details as to what transpired that supports a claim.  See Davis v.
County of Nassau, 355 F. Supp. 2d 668, 673 (E.D.N.Y. 2005).  The
Court reviews the instant motions under this standard.

<u>**DISCUSSION**</u>

Defendants move to dismiss all of Plaintiffs' claims for
failure to state a claim pursuant to Rule 12(b)(6).  The Defendants
argue that the statute of limitations and res judicata bar
Plaintif's claims.  Second, the Town Defendants argue that
Plaintiff fails to state due process and equal protection claims.
Third, the individual Town Defendants contend they are entitled to
qualified immunity.  Mees argues that he is a private person and
not liable under section 1983 and that the conspiracy claim must
fail.  At the outset, the Court notes that Plaintiff does not rebut
the Town Defendants' argument regarding the due process claims.
Accordingly, the Court GRANTS Defendants' motion to dismiss the due
process claims.

I.   Statute Of Limitations

Section 1983 and 1985 claims are subject to a statute of
limitations, and such claims must be filed no more than three years
after the claim accrues.  See Owens v. Okure, 488 U.S. 235, 251,
109 S. Ct. 573, 102 L. Ed. 2d 594 (1989).  "Under federal law,

which governs when §§ 1983 and 1985 [claims] accrue, the statute of limitations begins to run once the plaintiff knows of the injury on which the claim is based." Jaghory v. N.Y. State Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997).  A court should focus on "the time of the discriminatory act, not the point at which the consequences of the act becomes painful." Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994) (quoting Chardon v. Fernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 70 L. Ed. 2d 6 (1981)).

The Defendants acknowledge that at least one act falls within the three-year statute of limitations period: the April 10 Raid.  (Compl. ¶ 94.)  Based on the allegations, all other discriminatory acts took place outside the three-year period. Defendants contend the April 10 Raid of Plaintiff's Property flowed directly from a time-barred 2001 criminal prosecution.  However, the Court must reject this argument from the outset: at this juncture, Defendants do not offer proof.  The Court is required to look solely to Plaintiff's Complaint and treat such allegations stated therein as true.

Plaintiff argues that the continuing violation doctrine applies here.  But the Court need not address this argument because even under Defendants' standard, the Court cannot ascertain exactly when Plaintiff knew or had reason to know of Defendants' discriminatory treatment.  Further, Plaintiff alleges he did not

9

know of any discriminatory treatment until after the April 10 Raid upon his Property.  (Pl.'s Opp. 17.)

Construing all inferences in Plaintiff's favor and taking the allegations in the Complaint as true, the Court must DENY Defendants' motion to dismiss based on the statute of limitations. The Court, however, grants Defendants leave to raise this argument again on a summary judgment motion after discovery.  Perhaps at that point, the parties will have evidence as to when exactly Plaintiff knew or had reason to know of the discriminatory treatment.  But until that precise moment is known, the Court cannot say as a matter of law the statute of limitations bars Plaintiff's claims.

II.  <u>Res Judicata</u>

The Town Defendants next argue that Plaintiff's claims are barred by res judicata.  For the reasons below, the Court rejects this argument.

The doctrine of res judicata, or claim preclusion, provides that a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." <u>Allen v. McCurry</u>, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). Res judicata cannot bar re-litigation of causes of action when the "initial forum did not have the power to award the full measure of

relief sought in the subsequent litigation." <u>Rameau v. N.Y. State of Dep't of Health</u>, 741 F. Supp. 68, 71 n.2 (S.D.N.Y. 1990). Parties cannot recover damages for civil rights violations in Article 78 proceedings. Thus, res judicata cannot bar any subsequent federal actions seeking such relief. <u>See</u> <u>id.</u>, <u>Davidson v. Capuano</u>, 792 F.2d 275, 278 (2d Cir. 1986).

The Court doubts whether Plaintiff could have raised such claims for civil rights violations in the Article 78 proceeding. First, Plaintiff claims that he did not know of the facts that form the basis for his claims of civil rights violations. Second, the Court finds that even if Plaintiff did raise such claims in the Article 78 proceeding, he would not be entitled to any damages flowing from the civil rights violations. Thus, the Court rejects this argument.[1]

III. <u>Equal Protection</u>

The Town Defendants argue that Plaintiff's Equal Protection claim fails. Purportedly, Plaintiff is not similarly

---

[1]   The Court notes that in the Town Defendants' Reply papers, the Town Defendants raise for the first time an argument on issue preclusion. However, the Court exercises its discretion to not address such arguments as the Town Defendants never raised them in their moving papers. It is inherently unfair that Plaintiff never had the opportunity to oppose such arguments. <u>See</u> <u>Playboy Enters. v. Dumas</u>, 960 F. Supp. 710, 720 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.").

situated to the individuals Plaintiff discusses in the Complaint. For the reasons below, the Court disagrees and rejects this argument.

"[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) (citation omitted). "[T]he Equal Protection Clause requires that the government treat all similarly situated people alike." Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003). A plaintiff can bring either a selective prosecution Equal Protection claim or a class-of-one Equal Protection claim. Id.

> To succeed in an action alleging selective prosecution, plaintiffs in this Circuit have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

Id. (quoting Harlen Assocs. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001).

To succeed in a class-of-one Equal Protection claim, a plaintiff must "show that [he was] treated differently from similarly

situated [people] . . . , and that 'no rational basis for the difference in treatment existed.'" <u>Id.</u> (quoting <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000).

Plaintiff here alleges that he was a victim of both types of equal protection violations: (1) the Defendants discriminated against him and treated him differently because of his Hispanic heritage, and (2) the Defendants discriminated against him based upon Plaintiff's class-of-one status.

To be similarly situated in an equal protection violation based on race, the Plaintiff must be similarly situated to others "in all material respects." <u>Shumway v. UPS</u>, 118 F.3d 60, 64 (2d Cir. 1997). Groups of people are similarly situated if

> a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. Much as in the lawyer's art of distinguishing cases, the "relevant aspects" are those factual elements which determine whether reasoned analogy supports, or demands, a like result. Exact correlation is neither likely [n]or necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.

<u>Equus Assocs. Ltd. v. Town of South Hampton</u>, 37 F. Supp. 2d 582, 598 (E.D.N.Y. 1999) (quoting <u>Dartmouth Review v. Dartmouth Coll.</u>, 889 F.2d 13, 19 (1st Cir. 1989)).

In a class-of-one Equal Protection case, a plaintiff's similarity to other property owners must be "extremely high."

13

Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005).  The standard of similarity for class-of-one plaintiffs is much higher than it is for plaintiffs who bring Equal Protection claims based on being a member of a certain class.  See id. at 104-06 (stating that a "more stringent standard" applies).  "[T]he standard for whether another person's circumstances are similar to the plaintiff's must be . . . whether they are 'prima facie identical.'"  Id. at 105 (quoting Purze v. Vill. of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002).  A plaintiff must show that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

Id.

"Whether two [people] are similarly situated is ordinarily a question of fact for the jury."  Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000).  This rule also applies in zoning cases where a plaintiff brings forth Equal Protection claims.  See Kirschner v. Zoning Bd. of Appeals, 924 F. Supp. 385, 394 (E.D.N.Y. 1996) (stating that whether locations of certain entities renders them similarly situated is "not the sort of decision this Court should make as a matter of law.").

Construing all inferences in favor of Plaintiff and

14

taking the allegations as true, the Court finds that Plaintiff has met his prima facie burden of establishing that he was treated differently than those similarly situated to him.  First, other property owners were allegedly able to operate auto repair businesses adjacent to his Property, and Plaintiff could not even open his auto repair shop.  Second, the Town Defendants never cited those other auto repair businesses and other commercial businesses in the adjacent area whereas Plaintiff's Property was cited and subject to the April 10 Raid.  Further, when Plaintiff applied for a special use permit, the Town denied his application, claiming that the area in which the Property was located prohibited auto repair shops.  Accordingly, the Court DENIES the Town Defendants' motion to dismiss Plaintiff's equal protection claims.

IV.  <u>Qualified Immunity</u>

"Under the doctrine of qualified immunity, a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." <u>Savino v. City of New York</u>, 331 F.3d 63, 71 (2d Cir. 2003) (quoting <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 385 (2d Cir. 2003)).  "Legislators are entitled to absolute immunity from civil liability for their

legislative activities." <u>Harhay v. Ellington Bd. of Educ.</u>, 323 F.3d 206, 210 (2d Cir. 2003).

This absolute immunity extends only to those acts "taken 'in the sphere of legitimate legislative activity'" and not administrative acts. <u>Id.</u> (quoting <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 54, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998)). "Broad, prospective policy making" is characteristic of legislative acts whereas actions aimed at one person and one situation are not. <u>Id.</u> at 211. Furthermore, denying a permit application is more administrative in nature than legislative. <u>See Altaire Builders, Inc. v. Horseheads</u>, 551 F. Supp. 1066, 1073-75 (W.D.N.Y. 1982). With zoning, the distinction lies between <u>enacting</u> zoning regulations that broadly affect a community and <u>enforcing</u> zoning regulations which affects only the individual requesting to be exempt from zoning regulations. Enacting such regulations is legislative in nature; enforcing them via permit denials and zoning applications is administrative. <u>See id.</u>

The individual Town Defendants claim they are entitled to qualified immunity. The individual Town Defendants argue that it was objectively reasonable for them to deny Plaintiff's variance application based on Plaintiff's failure to show hardship was not self-created.

The Court is not swayed. The Complaint's allegations do

not support a finding of qualified immunity for the individual Town Defendants.  When the individual Town Defendants denied Plaintiff's permit application, they were not enacting broad-sweeping regulations.  Such type of governmental activity does entitle a government official to qualified immunity.  However, in this case, Plaintiff claims that the denial of his permit and other individual acts violated his rights.  These actions are more akin to enforcing zoning regulations, which do not cloak the government officials with qualified immunity - at least not on the facts as presented in the Complaint.

V.    <u>Mees As A Private Actor Under The Conspiracy Theories</u>

Defendant Mees contends that he is not liable to Plaintiff on a section 1983 claim because he is a private actor and not a state actor.  The Complaint purportedly fails to show that Mees was so entwined with the Town's actions that he can be held liable as a state actor.  For the reasons below, the Court rejects Mees' argument.

To be liable under 42 U.S.C. § 1983, a plaintiff must establish a defendant was acting "under color" of state law.  42 U.S.C. 1983.  "Conduct by a private entity constitutes state action only when 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State

17

itself.'" <u>Tancredi v. Metro. Life Ins. Co.</u>, 378 F.3d 220, 229 (2d Cir. 2004) (quoting <u>Jackson v. Metro. Edison Co.</u>, 419 U.S. 345, 351, 95 S. Ct. 449, 42 L. Ed. 2d 447 (1974).

The Supreme Court broadened the definition of a state actor. <u>See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 302, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2001); <u>Tancredi</u>, 378 F.3d at 229-30. If a private entity's actions are so "entwined" with certain functions of a state, then a private entity can be found to be a state actor even though under other tests, this may not be the case. <u>See Brentwood Acad.</u>, 531 U.S. at 302 (holding that the Tennessee Secondary School Athletic Association was a state actor because its actions were so "entwined" with the state function of operating public schools); <u>Tancredi</u>, 378 F.3d at 229-30. Noting the "nebulous" and flexible state action test, the Second Circuit recognized yet another way a private entity could qualify as a state actor: through "entwinement." <u>See Tancredi</u>, 378 F.3d at 230.

> Section 1983 addresses those injuries caused by state actors or those acting under color of state law. A private defendant may be held liable only as a willful participant in joint activity with the State or its agents. . . . To state a claim against a private entity on section 1983 conspiracy theory, the complaint must allege facts demonstrating a private entity acted in concert with a state actor to commit an unconstitutional act. In final analysis the question is whether the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State.

Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992)

(internal quotation marks and citations omitted).

> [T]o make out a violation of § 1985(3), . . . the
> plaintiff must allege and prove four elements: (1) a
> conspiracy (2) for the purpose of depriving, either
> directly or indirectly, any person or class of persons of
> the equal protection of the laws, or of equal privileges
> and immunities under the laws; and (3) an act in
> furtherance of the conspiracy; (4) whereby a person is
> either injured in his person or property or deprived of
> any right or privilege of a citizen of the United States.

United Bhd. of Carpenters and Joiners, Local 610 v. Scott, 463 U.S.

825, 829, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1982).

In the case at hand, Plaintiff alleges that Mees
conspired with the Town Defendants to violate Plaintiff's equal
protection rights. Mees "spewed a multitude of racial slurs at
Plaintiff in the presence" of the individual Town Defendants.
Additionally, Mees hired an attorney - who was a former Town
attorney - to oppose Plaintiff's special permit application at the
hearing. This attorney allegedly had some influence over the Town
Defendants. Mees also is the Town's mechanic. Plaintiff further
argues that the fact that Mees could operate his auto repair shop
while allegedly violating the same provision as Plaintiff indicates
that an agreement existed between Mees and the Town Defendants.
(Pl.'s Opp. 25.)

In the Complaint, Plaintiff alleges that Mees and the

Town Defendants "devised a plan" to charge Plaintiff with Town Code violations. (Compl. ¶ 48.) The Defendants then conspired to ensure that the Town Defendants would deny Plaintiff's special use permit application. (Id. ¶ 49.) Then the Town issued a notice of violation to Plaintiff to protect Mees and to harass Plaintiff with discriminatory motive. (Id. ¶ 62.) When Plaintiff's attorney inquired about the violation, individual Town Defendant Paul Houlihan ("Houlihan") responded, "I suggest you advise your client . . . [to] look for another site." (Id. ¶ 69.)

Mees - through his Town-affiliated attorney - wrote to Houlihan because his client was concerned about an auto repair garage adjacent to his property without the requisite land use approvals. Mees' attorney then requested that the Town immediately review all its files on the Plaintiff's Property "and renew immediate enforcement of any land use code provisions to enjoin the use of this [P]roperty." (Id. ¶ 73.) Mees was not worried about his own violations because of his "connections." (Id. ¶ 74.)

Based on these facts, the Court finds that Plaintiff alleged sufficient facts to hold Defendant Mees liable under a section 1983 and section 1985 conspiracy claim. A section 1983 claim may lie because Defendant Mees allegedly acted in concert with a state actor to commit an unconstitutional act against Plaintiff. Mees devised a plan with the Town Defendants to ensure

20

that the Town would deny Plaintiff's special use permit.  A section 1985 claim may lie because the Defendants devised a plan and conspired to deprive Plaintiff of his equal protection rights. Mees did not hide his racist feelings and hired an attorney to expedite the denial of Plaintiff's special use permit applications. Defendants' conduct damaged Plaintiff.

<u>**CONCLUSION**</u>

For the reasons above, the Court DENIES in part and GRANTS in part the Town Defendants' motion to dismiss.  The Court DENIES in its entirety Mees' motion to dismiss.  The Court dismisses with prejudice Plaintiffs' due process claims and orders the parties to appear before the Magistrate to set a discovery schedule.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March 28, 2007
          Central Islip, New York

21